IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

*FILED*

*JUL 8 2019*

*U.S. DISTRICT COURT-WVND*
*WHEELING, WV 26003*

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        CRIM. ACTION NO.: 5:19CR2
        (BAILEY)

DAVID E. BEAZEL,

        Defendant.

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT DEFENDANT'S MOTION [22] TO SUPPRESS EVIDENCE BE DENIED

Currently pending before the Court is Defendant's Motion [22] to Suppress Evidence, filed April 25, 2019. Plaintiff filed a Response in Opposition [41] on May 31, 2019.[1] The Court held evidentiary hearings on June 26, 2019, June 28, 2019 and July 3, 2019.[2] After considering the parties' briefs, the applicable law and the Court file, and after considering the evidence and argument presented during the aforementioned hearings, the undersigned would recommend that Defendant's Motion to Suppress [ECF No. 22] be **DENIED**.

## I.
## FACTUAL/PROCEDURAL HISTORY

On June 4, 2017, Mr. Beazel resided at 1066 Battle Run Road, Triadelphia, West Virginia. On that day, two police officers, West Virginia State Trooper First Class C.W. Heckler (hereinafter "Trooper Heckler") and the late Ohio County Sheriff's Deputy Dean Motta

---

[1] Though this Motion was originally set to be heard on June 10, 2019, the same was continued twice at the request of the Government. These requests were not opposed.
[2] The Court conducted multiple hearings so that Defendant could present the testimony of Mr. McCardle.

(hereinafter "Deputy Motta") presented at 1066 Battle Run Road, Triadelphia, in an attempt to serve a Revocation Order for a license plate. The Revocation Order was issued to Brian M. Zink. Brian Zink last resided at that address approximately one year before the events at issue.

Trooper Heckler indicated that, while standing outside Defendant's home, he could see a person later identified as Defendant in the basement area. Trooper Heckler observed another male in the basement area who was later identified as Michael Edward McCardle, Jr. (hereinafter "Mr. McCardle"). Defendant exited the home and engaged Trooper Heckler. Officers detected a strong odor of marijuana coming from the residence. Defendant admitted that he and Mr. McCardle had just 'smoked a bowl' inside the residence. At some point during this exchange, Mr. McCardle also came to be outside.[3] Upon inquiry from Trooper Heckler, Mr. McCardle advised that his girlfriend was inside the home, sleeping. However, Trooper Heckler's recollection of this exchange was that the officers were simply told that there "may" be someone else in the house. Trooper Heckler then entered the residence through the basement door while Deputy Motta remained outside with Defendant and Mr. McCardle.

Once inside the residence, Trooper Heckler observed on a coffee table, a clear plastic bag which contained a green leafy substance believed to be marijuana. On the couch near the coffee table, Trooper Heckler observed a firearm in a holster. Trooper Heckler then conducted a sweep of the basement area. During this time, Trooper Heckler did not look in any containers, drawers, closets, etc. However, while clearing a room adjacent to the basement, Trooper Heckler observed what has been called a 'marijuana grow room,' with numerous plants underneath fluorescent lights.

---

[3] According to Trooper Heckler, Mr. McCardle exited the house on his own. According to Mr. McCardle, Trooper Heckler yelled for him to come outside.

Trooper Heckler then left the basement and returned outside to Deputy Motta, Defendant and Mr. McCardle.   Trooper Heckler detained both Defendant and Mr. McCardle, notified dispatch of the situation and requested that additional officers be sent to the scene, then went back inside the residence to secure the basement.   Trooper Heckler did not pursue the other person or people inside the residence, choosing instead to wait for additional officers to arrive. Once they did, law enforcement cleared and secured the residence in anticipation of obtaining a search warrant.   They found Amy Beaver in a bedroom on the first floor.   There is no evidence that either Defendant or Mr. McCardle were violent with each other or with either of the officers. There is likewise no evidence that either Defendant or Mr. McCardle were ever non-compliant during these events.

Following a search conducted pursuant to a search warrant, officers obtained approximately eighty-eight (88) marijuana plants, drug paraphernalia, suspected methamphetamine, suspected methamphetamine-manufacturing supplies, and the firearms which form the basis for the instant indictment.

## II.
## ARGUMENTS OF THE PARTIES

### A. Defendant's Arguments

Defendant contends that the search of his residence was unconstitutional and therefore, all evidence from the same should be suppressed.   Specifically, Defendant argues that Trooper Heckler and Deputy Motta knew or should have known that the license plate they sought to revoke was not located at Defendant's residence.   Defendant further argues that Trooper Heckler had no basis for a warrantless entry into his residence because Trooper Heckler did not have a search warrant and no exigency justified the same.   Similarly, Trooper Heckler's warrantless

search of the basement was not legally justified because, according to the evidence, circumstances did not exist to justify an objective concern for officer safety. Additionally, Defendant maintains that Trooper Heckler's own actions showed that 'officer safety' was not a legitimate concern, and any concern for 'officer safety' was manufactured by Trooper Heckler himself.

### B.  Government's Arguments

The Government argues that Defendant's Fourth Amendment rights were not violated because there was probable cause to believe that contraband was present in the home and exigent circumstances existed to justify a warrantless entry into Defendant's residence. Once inside, Trooper Heckler's protective sweep was justified by the firearm in plain view, because of the indication that there was at least one other person in the residence, and because an arrest is not necessary to perform a protective sweep. Finally, the Government maintains that Trooper Heckler did not manufacture his concern for officer safety.

**III.**
**DISCUSSION**

### A.  Officers' Presence at Defendant's Residence

Defendant first argues that Trooper Heckler and Deputy Motta knew or should have known that the license plate they sought to revoke would not be located at Defendant's residence. Nevertheless, Trooper Heckler and Deputy Motta "insisted" on approaching and speaking with Defendant and Mr. McCardle on the date in question, which then resulted in an "unwarranted interrogation." ECF No. 22 at p. 1. It was during this "unwarranted interrogation" that Trooper Heckler smelled marijuana. Though not specifically stated, Defendant seems to suggest that Trooper Heckler and Deputy Motta were improperly at Defendant's residence on the

date in question and that, therefore, all evidence obtained as a result of their interaction with Defendant should be suppressed.   Defendant's factual assertions do not comport with the evidence in the record, however.   Indeed, there is no evidence that either Trooper Heckler or Deputy Motta initiated contact with Defendant, much less "insisted" on "approaching" him. Rather, the evidence indicates that Defendant voluntarily and without being requested, exited the residence and engaged Trooper Heckler and Deputy Motta, thereby initiating contact.   The evidence further indicates that the person upon whom Trooper Heckler and Deputy Motta were trying to serve the license plate Revocation Order, a Mr. Zink, had in fact lived at Defendant's residence the year prior.   Therefore, it was not unreasonable for Trooper Heckler and Deputy Motta to attempt to serve the Revocation Order at that address.

Notwithstanding the above, and assuming Trooper Heckler and Deputy Motta did approach Defendant's residence to inquire of either Defendant or Mr. McCardle about the missing license plate, thereby initiating contact, no Fourth Amendment rights would have been implicated by such actions.   As the Fourth Circuit has recognized,

> [a]bsent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned violation of the person's right to privacy, for any one openly and peaceably...to walk up the steps and knock on the door of any man's 'castle'...whether the questioner be a pollster, a salesman, or an officer of the law.

*United States v. Taylor*, 90 F.3d 903, 909 (4th Cir. 1996) (quoting *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964)).   There is no evidence that Defendant gave express orders against any possible trespass.   To the contrary, Defendant met the officers outside his residence after seeing their approach through a basement window and willfully and cooperatively engaged them in conversation.   Therefore, this argument is not persuasive.

## B. Exigent Circumstances

Defendant next argues that exigent circumstances did not exist to justify Trooper Heckler's warrantless entry into Defendant's home on the date in question.   Indeed, the United States Supreme Court has recognized that "searches conducted outside of the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject to only a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).  The Supreme Court in *Kentucky v. King* stated similarly that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Kentucky v. King*, 563 U.S. 452, 459 (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal citations omitted)).  However, the *King* Court also recognized that "this presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness." *King*, 563 U.S. at 459 (internal citations and quotations omitted).

"One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (internal citations and quotations omitted)).  Several exigencies justify warrantless entry and search of a home, among them "the need to prevent the imminent destruction of evidence." *King*, 563 U.S. at 460 (quoting *Brigham City, supra* at 403) (internal quotations omitted)).  Such exigency was present at the time of Trooper Heckler's warrantless entry into Defendant's home because evidence existed that (1) contraband was in the home, (2) another person was inside the home, and (3) the contraband could have been easily destroyed.

In so concluding, the Court acknowledges Defendant's argument that the smell of marijuana does not, standing alone, permit a law enforcement officer to enter and/or search a home. Such an argument is misplaced, however, because evidence indicates that Trooper Heckler did not enter the residence based upon the smell of marijuana alone. Rather, the evidence indicates that Trooper Heckler entered the residence because Defendant and Mr. McCardle had just admitted that they had they had just "smoked a bowl" of marijuana, and that someone else was inside the residence. This 'someone else' could have, as Defendant and Mr. McCardle did, realized officers were outside and, fearing discovery, destroyed the contraband, i.e. the marijuana. Further, and because drugs are easily destructible, it was reasonable for Trooper Heckler to conclude that the 'other person' could easily and quickly destroy any remaining marijuana before he was able to secure a search warrant. *See King*, 563 U.S. at 461 ("[d]estruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain"). Because it was reasonable for Trooper Heckler to conclude, based upon the information available to him, that the person or persons in the home could imminently destroy the marijuana, exigent circumstances existed for Trooper Heckler to enter Defendant's residence without a warrant.

## C. Protective Sweep

Defendant next contends that Trooper Heckler, after gaining entry to Defendant's residence, "decided to search the whole basement apartment." ECF No. 22 at p. 5. This is not borne out by the evidence. There is no evidence that Trooper Heckler "searched the whole basement apartment." To the contrary, evidence indicates that Trooper Heckler did not search compartments, drawers, closets or anything of the like. Rather, once inside and once Trooper Heckler observed in plain view the marijuana and a firearm, Trooper Heckler conducted a

cursory, visual sweep of the areas located in Defendant's basement apartment.  Such a cursory, visual inspection is justified for officer safety where exigent circumstances are present. *Maryland v. Buie*, 494 U.S. 325, 327 (1990); *United States v. Spotted Elk*, 548 F.3d 641, 651 (8th Cir. 2008).  As explained above, exigent circumstances were present in this case.  Additionally, the Court would note Mr. McCardle's testimony wherein he stated that Trooper Heckler was in the house only a short time.[4]  Therefore, the sweep lasted no longer than necessary.  *Buie*, 494 U.S. at 335-36 ("[t]he sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises").

In so concluding, the Court acknowledges Defendant's averments that: (1) no circumstances justified an objective concern for officer safety; (2) Trooper Heckler's actions show that he did not have a sincere concern for officer safety; and (3) Trooper Heckler manufactured the concern for officer safety by his entry into Defendant's residence without a warrant.  These arguments are not persuasive.

### 1.  No Objective Concern for Officer Safety

Trooper Heckler's limited, cursory sweep of the basement apartment was lawful and justified, particularly after finding in plain view the marijuana and the firearm.  At the time he conducted the cursory sweep, Trooper Heckler had made a warrantless entry due to exigent circumstances, as explained above.  Therefore, he was lawfully in the house.  Once inside, and as stated previously, Trooper Heckler observed in plain view marijuana and a firearm.  Trooper Heckler testified that, once he saw the firearm, his concern transformed from evidence

---

[4]  Mr. McCardle indicated that Trooper Heckler was in the house "a couple of minutes."

preservation to officer safety. The firearm, the presence of contraband and the presence of an unknown person is enough to provide objective basis for a concern of officer safety.

Prior to his seeing the firearm, Trooper Heckler had been advised by Mr. McCardle that his girlfriend was inside the house, sleeping. There is also some indication that Trooper Heckler had been advised that Mr. McCardle's girlfriend was sleeping on the first floor, rather than in the basement apartment. Though not explicitly stated, the thrust of this argument seems to be that Trooper Heckler was not and could not have been threatened by a sleeping woman one floor away from the location of his entry. This argument is similarly not persuasive.

Trooper Heckler could not have known definitively whether Mr. McCardle's girlfriend was the only person in the house or how easily she could have accessed the marijuana. There is no evidence that Trooper Heckler was familiar with the actual layout of the house, and he could not have known whether and to what extent Mr. McCardle's girlfriend or anyone else in the house was armed (which is a reasonable concern given the presence of illegal drugs and the firearm in plain view). Moreover, Trooper Heckler was not bound by the representations of Mr. McCardle as to his girlfriend being the only occupant in the house or as to his representations that she was sleeping in a bedroom on the first floor. *United States v. Laudermilt*, 677 F.3d 605, 611 (2012) ("officers are not bound by a suspect's statement" regarding the presence or absence of third persons in a residence prior to a protective sweep) (citing *Solis-Alarcon v. United States*, 662 F.3d 577, 582 (1st Cir. 2011)).

Additionally, and as the Government has noted, the fact that Amy Beaver was later determined to have been the person inside the house, and the fact that she did not pose a threat to officers is not determinative of whether Trooper Heckler's sweep of the basement apartment was justified. This analysis does not turn on what Trooper Heckler was able to determine <u>after</u> the

9

fact of the sweep, but rather, what Trooper Heckler knew at the time he conducted the sweep, and the information available to him at that time lead to the objectively reasonable conclusion that the person or persons inside Defendant's residence posed a threat to his and Deputy Motta's safety. *See Buie*, 494 U.S. at 334.

Defendant also suggests that, because this case involved marijuana rather than some other 'actually dangerous' controlled substance such as heroin, fentanyl or opioids, the situation did not call into question officer safety. This argument is not persuasive. Regardless of Defendant's opinion as to the danger associated with marijuana, marijuana is an illegal substance under federal law. Further, it was not the marijuana alone which prompted Trooper Heckler's concern for officer safety. Rather, it was the marijuana combined with the openly obvious firearm and the presence of an unknown person or persons inside the residence.

Finally, Defendant argues there was no objective concern for officer safety because (1) no one was under arrest at the time of Trooper Heckler's basement sweep, (2) Mr. Beazel and Mr. McCardle were not violent with each other or with officers, and (3) Mr. Beazel and Mr. McCardle were cooperative and compliant with officers at all times. However, under the factual scenario at issue, Mr. Beazel and Mr. McCardle were not the persons who presented a threat to officer safety. Rather, the unknown and unaccounted person (or persons) within the residence presented the threat, and this threat did not arise during the initial contact with Mr. Beazel and Mr. McCardle, but arose once Trooper Heckler entered the residence and observed the firearm in plain view. For the reasons previously explained, these circumstances presented an objective concern for officer safety.

### 2. Concern Not Sincere

Defendant next contends that Trooper Heckler's decision to remain in the basement area of the residence rather than searching for the unknown person or persons in the home shows that his claim for officer safety is disingenuous.   The undersigned disagrees.   Because Trooper Heckler did not know how many people were in the residence at the time of his entry, and because there existed the very real possibility that this person or people were armed (given the illegal drugs and the firearm in plain view in Defendant's basement apartment), the undersigned would conclude that it was reasonable for Trooper Heckler to wait for the arrival of additional officers before sweeping the balance of the residence.

### 3. Manufactured Concern for Officer Safety

Defendant also argues that the "police-created exigency doctrine" applies and that suppression of evidence is required as a result.   Specifically, Defendant argues that, because Trooper Heckler unlawfully placed himself inside Defendant's residence in the first instance, he was not lawfully in a position to view either the marijuana or the firearm, which were both in plain view.   Consequently, any exigency upon which Trooper Heckler relies was his own doing, or manufactured, which renders the circumstances such that "police may not rely" upon them. ECF No. 11-12, citing *King*, 563 U.S. at 463 and *Horton v. California*, 496 U.S. 128, 136-140 (1990).   This argument is not persuasive.

In *King,* the Supreme Court considered the "police created exigency doctrine," and held that "the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable in the same sense." *King*, 563 U.S. at 462.   The Court further explained that, "[w]here...the police did not create the exigency by engaging or

threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *Id.*

As the undersigned has previously explained, Trooper Heckler did not engage or threaten to engage in conduct that violated the Fourth Amendment.  Trooper Heckler's warrantless entry into Defendant's home was precipitated by the admitted presence of marijuana and the fact that another person or persons were inside the home.  As was previously discussed, the other person or persons could have easily destroyed the marijuana.  There is nothing which Trooper Heckler did on his own that led to these exigent circumstances.  Trooper Heckler did not even knock on Defendant's door to ask about the sought-after license plate.  Rather, Defendant, on his own volition, exited his residence and initiated contact with officers.  Viewed objectively, these circumstances justified Trooper Heckler's actions.  *Id.* at 464 (quoting *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006)).  Therefore, Trooper Heckler did not manufacture the exigent circumstances in this case.

## IV.
## <u>CONCLUSION</u>

Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that the Defendant's Motion to Suppress Evidence [ECF No. 22] be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within **fourteen (14) days** after being served with a copy of this Report and Recommendation file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file

objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, to the United States Marshals Service and to the United States Probation Office.

Dated:  7-8-19

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

13